# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WALTON,<br>Plaintiff,<br>v.<br>ROGERS HELICOPTERS, INC., et al.,<br>Defendants. | Case No. 1:26-cv-05966-SAB<br>ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS<br>(ECF No. 6) |

Pending before the Court is the partial motion to dismiss for failure to state a claim filed by Defendants Rogers Helicopters, Inc. and Donna Nisbett. The Court has reviewed the motion and finds it suitable for disposition without a hearing. L.R. 230(g). Having considered the moving papers and arguments by counsel, as well as the Court's file, the Court will deny Defendants' motion.

**I.**

**BACKGROUND**

Plaintiff is Jennifer Walton ("Plaintiff"), a female individual residing in Fresno County, California, who worked for Defendant Rogers Helicopters, Inc. ("Rogers Helicopters") for over ten years before being terminated on November 18, 2025. (ECF No. 5, ¶ 9.) Rogers Helicopters is a California corporation doing business in Fresno County and, at all relevant times, was an "employer" within the meaning of Title VII (42 U.S.C. § 2000e(b)), the California Fair

Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12926(d)), the Equal Pay Act (29 U.S.C. § 203(d)), and state labor statutes. (Id. at ¶ 10.) Defendant Donna Nisbett ("Nisbett") is an individual who acted as general manager and human resources manager for Rogers Helicopters, "exercising operation control over Plaintiff's working conditions and compensation . . . ." (Id. at ¶ 11.)

Plaintiff worked as an administrative, billing, and accounting professional for Rogers Helicopters for approximately 10.5 years. (Id. at ¶ 14.) Plaintiff was a highly dedicated employee, received consecutive performance-based raises, and had zero disciplinary actions in her file. (Id.) Throughout her employment, Plaintiff was paid $25.68 per hour for complex administrative and accounting duties. (Id. at ¶ 15.) Plaintiff alleges that male employees in male-dominated operational roles were offered better compensation rates and/or better family benefits. (Id.) For example, pilots (a male-dominated role) were provided fully employer-paid family medical coverage, a benefit strictly denied to Plaintiff, who was required to contribute or go without equivalent family benefits. (Id.) As another example, mechanics (a male-dominated role) were compensated with lucrative day rates, whereas Plaintiff was forced into an inferior monthly flat rate for her mandatory weekend labor and ongoing availability. (Id.)

Rogers Helicopters contracted Plaintiff to clean corporate residential apartments on weekends. (Id. at ¶ 16.) Instead of paying overtime premiums based on her $25.68/hour wage rate, Defendants paid Plaintiff a non-negotiated flat rate of $500 per month. (Id.) Meanwhile, Plaintiff alleges male operational staff were not subjected to monthly flat-rate domestic cleaning structures for company facilities. (Id.)

During annual "fire seasons" (April-December), Plaintiff was required to remain on-call 24/7 on her personal phone without additional on-call compensation or wage premiums. (Id. at ¶ 17.) And beginning in 2020, Rogers Helicopters systematically denied Plaintiff state-mandated ten-minute rest breaks. (Id. at ¶ 18.) Defendant Nisbett explicitly instructed office staff that personal breaks must be taken strictly at their desks while continuing work. (Id.)

On September 12, 2025, Plaintiff alleges Defendant Nisbett confronted her, leaned over Plaintiff's desk, pointed her finger at Plaintiff, and shouted that she "just want[ed] the fucking

apartments cleaned and nothing else." (Id. at ¶ 19.) Plaintiff reported the incident, along with the broader pattern of illegal wage practices, pay disparities, and hostile managerial behavior to President Vernie Rogers, Vice President Robin Rogers, and the Director of Operations. (Id.) Plaintiff alleges that these executives instructed Plaintiff to "stay quiet," "remain submissive," and wait for the situation to "blow over." (Id.) Following these complaints, Defendants[1] stripped Plaintiff of the billing responsibilities she held for a decade, heavily micromanaged her, isolated and ignored her for weeks, mocked her within earshot, and told her not to speak with Vice President Robin Rogers about her concerns and to "go to therapy" when she sought basic work-related communication. (Id. at ¶ 20.)

On November 18, 2025, Rogers Helicopters terminated Plaintiff. (Id. at ¶ 21.) When Plaintiff asked for a reason, management stated they "did not have one." (Id.) Defendant Nisbett presented a severance and liability release waiver and, when Plaintiff declined to sign, remarked: "It's not like you can afford to get an attorney." (Id.) Despite multiple formal requests made both before and after her termination, Defendants have failed and/or refused to produce Plaintiff's personnel files and an employment handbook. (Id. at ¶ 22.)

On July 29, 2026, Plaintiff commenced this action, and on August 3, 2026, Plaintiff filed her first amended complaint, as a matter of course. (ECF Nos. 1, 5.) Plaintiff brings ten causes of action: 1) gender discrimination, in violation of Title VII – 42 U.S.C. § 2000e et seq.; 2) gender discrimination, in violation of FEHA, Cal. Gov. Code § 12940(a); 3) harassment / hostile work environment, in violation of FEHA, Cal. Gov. Code § 12940(j); 4) retaliation, in violation of FEHA, Cal. Gov. Code § 12940(h); 5) failure to prevent discrimination, harassment, and retaliation, in violation of FEHA, Cal. Gov. Code 12940(k); 6) violation of Federal Equal Pay Act, 29 U.S.C. § 206(d); 7) retaliation, in violation of Title VII (42 U.S.C. § 2000e-3(a)) and EPA (29 U.S.C. § 215(a)(3)); 8) failure to pay overtime, 29 U.S.C. § 207 and Cal. Labor Code §§ 510, 1194; 9) violation of California wage and hour laws, Cal. Labor Code §§ 226, 226.7, 512, 1182.12, 1194, 1197; 10) failure to timely produce personnel records, Cal. Labor Code §§

[1] The only named defendants to this action are Rogers Helicopters and Nisbett.

226, 1198.5. (ECF No. 5, pp. 5-10.)

On September 8, 2026, Defendants filed the instant partial motion to dismiss. (ECF No. 6.) This matter was directly assigned to a magistrate judge, offering the parties an opt-out period before construing a failure to file a declination form as consent to proceed with a magistrate judge presiding. (ECF No. 3.) Plaintiff did not file a timely declination, and Defendants timely filed a consent form; on September 17, 2026, the Court authorized this action to proceed before the assigned Magistrate Judge for all further proceedings. (ECF No. 11.) Defendants' partial motion to dismissed was fully briefed (ECF Nos. 9, 12), and the Court takes the matter under submission. L.R. 230(g).

**II.**

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

**III.**

**DISCUSSION**

Defendants seek to dismiss only the third cause of action in this matter, harassment / hostile work environment in violation of FEHA, Cal Gov. Code § 12940(j). Defendants argue that Plaintiff has not plausibly alleged harassment because of her sex, the relevant allegations are personnel-management conduct, and that the alleged conduct does not sufficiently describe severe or pervasive harassment. (ECF No. 6, pp. 10-14.) Plaintiff opposes, arguing that she has sufficiently alleged harassment based on sex and that the allegations must be considered collectively under the totality of the circumstances. (ECF No. 9, pp. 4-6.) Plaintiff also addresses Defendants' argument regarding the allegations being personnel-management conduct. (Id. at p. 6.) The Court agrees Plaintiff.

**A. Harassment / Hostile Work Environment**

The FEHA prohibits sexual harassment in the workplace. Cal. Gov. Code § 12940(j)(1); see State Dept. of Health Services v. Superior Court, 31 Cal. 4th 1026, 1034, 79 P.3d 556 (Cal. 2003). Specifically, FEHA makes it an unlawful employment practice for an employer to harass an employee because of the employee's "sex, gender, gender identity, gender expression, . . . [or] sexual orientation . . . ." Cal. Gov. Code § 12940(j)(1).

"[T]he prohibition against sexual harassment includes protection from a broad range of conduct, [including] the creation of a work environment that is hostile or abusive on the basis of sex." Lyle v. Warner Brothers Television Productions, 38 Cal. 4th 264, 277, 132 P.3d 211 (Cal. 2006) (internal quotation marks omitted). "[A] plaintiff in a sexual harassment suit must show

the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] . . . because of . . . sex." Id. at 280 (internal quotation marks omitted). "To plead a cause of action for . . . sexual harassment, it is only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man [or a woman, he or] she would not have been treated in the same manner. Accordingly, it is the disparate treatment of an employee on the basis of sex—not the mere discussion of sex or use of vulgar language—that is the essence of a sexual harassment claim." Id. (internal citations and quotation marks omitted).

"[P]rohibited harassment includes verbal, physical, and visual harassment, as well as unwanted sexual advances. In this regard, verbal harassment may include epithets, derogatory comments, or slurs on the basis of sex; . . . visual harassment may include derogatory posters, cartoons, or drawings on the basis of sex." Lyle, 38 Cal. 4th at 280-81 (internal citations and quotation marks omitted).

> The working environment must be evaluated in light of the totality of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment.

Bailey v. San Francisco Dist. Attorney's Office, 16 Cal. 5th 611, 628 (Cal. 2024) (internal citations and quotation marks omitted). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." Id. at 629.

In addition, the plaintiff "must establish the offending conduct was imputable to [his or] her employer." Lyle, 38 Cal. 4th at 279. "Sexual harassment in a workplace is imputable to an employer in two situations." Carranza v. City of Los Angeles, 111 Cal. App. 5th 388, 401, 332 Cal. Rptr. 3d 778 (Cal. Ct. App. 2025). In the first situation, "[w]hen the harasser is a supervisor, the employer is strictly liable for the supervisor's actions." Bailey, 16 Cal. 5th at 635 (internal quotation marks omitted). "[H]owever, . . . an employer is only strictly liable under

FEHA for harassment by a supervisor if the supervisor is acting in the capacity of supervisor when the harassment occurs." Atalla v. Rite Aid Corp., 89 Cal. App. 5th 294, 309-10, 306 Cal. Rptr. 3d 1 (Cal. Ct. App. 2023). "The employer is not strictly liable for a supervisor's acts of harassment resulting from a completely private relationship unconnected with the employment and not occurring at the workplace or during normal working hours." Health Services, 31 Cal. 4th at 1041, n.3.

In the second situation, "[w]hen the harasser is a nonsupervisory employee, employer liability turns on a showing of negligence . . . . Specifically, '[h]arassment of an employee . . . by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." Bailey, 16 Cal. 5th at 635, quoting Cal. Gov. Code § 12940(j)(1).

"The underlying goal of FEHA . . . is to provide effective measures to prevent workplace harassment." Atalla, 89 Cal. App. 5th at 309, citing Health Services, 31 Cal. 4th at 1046-47. Therefore, "there is a need to determine whether sexual conduct that occurs off the worksite or after working hours constitutes an 'unlawful employment practice' within the ambit of [FEHA]." Farmers Ins. Group v. County of Santa Clara, 11 Cal. 4th 992, 1016, n.14, 906 P.2d 440 (Cal. 1995), quoting Cal. Gov. Code § 12940. Citing precedential decisions of the Fair Employment and Housing Commission, California courts have explained that "while the harassing conduct need not occur in the workplace, it must occur in a work-related context . . . . Unwelcome sexual conduct perpetrated by an agent, supervisor, or coworker, which occurs elsewhere but is in some fashion work-related also constitutes sexual harassment within the meaning of [FEHA]." Capitol City Foods, Inc. v. Superior Court, 5 Cal. App. 4th 1042, 1048, 7 Cal. Rptr. 2d 418 (Cal. Ct. App. 1992) (internal quotation omitted).

"In sum, to prevail on a claim of hostile work environment under FEHA, an employee must establish he or she was subjected to harassing conduct that was (1) unwelcome, (2) because of sex or gender, and (3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment." Kruitbosch v. Bakersfield Recovery Services, Inc., 114 Cal. App. 5th 200, 213, 336 Cal. Rptr. 3d 815 (Cal. Ct. App. 2025), citing

Bailey, 16 Cal. 5th at 627; Lyle, 38 Cal. 4th at 279; Cal. Gov. Code § 12940(j)(4)(C). "The plaintiff also must show the harassing conduct is, in some fashion, work related and imputable to the employer under the applicable standard." Id., citing Farmers, 11 Cal. 4th at 1016, n.14; Bailey, 16 Cal. 5th at 635.

**1. Because of Sex**

Defendants first argue that Plaintiff has not alleged that Defendants' conduct was done because of Plaintiff's sex. In Defendants' view, the only specifically described statement by Defendant Nisbett was that she "just want[ed] the fucking apartments cleaned and nothing else." (ECF No. 5, ¶ 19.) Defendants explain that the statement contains no reference to Plaintiff's sex, gender, or any female stereotype that would suggest that Defendant Nisbett made the statement because Plaintiff is woman rather than because of a dispute over the cleaning assignment. Moreover, Defendants contend that the operative complaint identifies no gender-based epithet, sexist remark, sexual comment, derogatory reference to women, or other statement evincing hostility toward Plaintiff because she is female. To be sure, Defendants observe that Plaintiff has alleged that company executives advised Plaintiff to "stay quiet," remain "submissive," and allow the situation to "blow over," but Defendants argue that Plaintiff has not pleaded facts supporting the conclusion that these comments were directed at Plaintiff because of her sex rather than to avoid a continued workplace dispute.

Defendants assert that Plaintiff attempts to tie any conduct to Plaintiff's sex with the allegation of "repeated disparaging remarks tied to Plaintiff's status as a financially dependent single female employee." (ECF No. 5, ¶ 36.) Yet, Defendants observe that the complaint does not identify the remarks themselves and does not identify any statement describing Plaintiff as financially dependent or connecting her marital status, finances, or sex to the challenged treatment. Moreover, the complaint does not allege who made such comments, when they were made, how often they were made, the context in which they were made, or the language supposedly demonstrating gender-based animus. Thus, Defendants argue that this fails to meet the Rule 8 pleading standard.

In opposition, Plaintiff argues that she has alleged that Defendants subjected her to

gender-stereotyped domestic cleaning work while male operational employees were not subjected to the same arrangement. Plaintiff further contends that she has alleged disparate compensation and benefits favoring male employees and repeated disparaging remarks tied to Plaintiff's status as a financially dependent single female employee. Of course, Plaintiff highlights the incident between her and Defendant Nisbett and that company executives later told her to "stay quiet," "remain submissive," and wait for the situation to "blow over." In Plaintiff's view, she has provided allegations that identify the protected characteristic, the gender-based context, the allegedly stereotyped work, the individual harasser, the words used, the intimidating conduct, and management's response. Finally, Plaintiff notes that the claim must be considered under the totality of circumstances alleged in the complaint. Therefore, Plaintiff argues that she has adequately alleged a sexual harassment claim under the FEHA. On this score, the Court agrees with Plaintiff.

In support, Plaintiff cites to Roby v. McKesson Corp., 47 Cal. 4th 686, 219 P.3d 749 (Cal. 2009). In Roby, the plaintiff argued that the Court of Appeal had erred in holding that there had been insufficient evidence to support a harassment claim following a jury verdict in the plaintiff's favor. Id. at 705. The California Supreme Court first noted the distinction between discrimination claims and harassment claims: "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." Id. at 707. Moreover, the Court confirmed that under the FEHA, a victim may have both a discrimination claim and a harassment claim where, for example, "discrimination [is] based on some official action of the employer" and "harassment [is based on] a supervisor for abusive messages that create a hostile working environment." Id.

With this in mind, the Roby Court observed that the plaintiff's "harassment claim . . . sought compensation for hostile social interactions in the workplace that affected the workplace environment because of the offensive message they conveyed to Roby." Id. at 708-09. "These harassing actions included Schoener's demeaning comments to Roby about her body odor and arm sores, Schoener's refusal to respond to Roby's greetings, Schoener's demeaning facial

expressions and gestures toward Roby, and Schoener's disparate treatment of Roby in handing out small gifts." Id. at 709. That said, the Court noted that "some actions that Schoener took with respect to Roby are best characterized as official employment actions rather than hostile social interactions in the workplace, but they may have contributed to the hostile message that Schoener was expressing to Roby in other, more explicit ways." Id. For example, "Schoener's shunning of Roby during staff meetings, Schoener's belittling of Roby's job, and Schoener's reprimands of Roby in front of Roby's coworkers." Id. Furthermore, the Court discussed that "acts of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." Id. In other words, "discrimination and harassment claims can overlap as an evidentiary matter." Id.

In reversing this aspect of the opinion by the Court of Appeal, the Roby Court noted that the error was that the court had 'allocated' or 'sifted' the evidence between the discrimination claim and the harassment claim when the evidence may support either or both claims simultaneously. See id. at 710. With that, the Court held that "the evidence [was] ample to support the jury's harassment verdict." Id. "The evidence included not only Schoener's rude comments and behavior, which occurred on a daily basis, but also Schoener's shunning of Roby during weekly staff meetings, Schoener's belittling of Roby's job, and Schoener's reprimands of Roby in front of Roby's coworkers. This evidence was sufficient to allow the jury to conclude that the hostility was pervasive and effectively changed the conditions of Roby's employment." Id. In addition, the Roby Court held that "the jury could infer, based on the discrimination evidence, that supervisor Schoener's hostility was "because of . . . [Roby's] medical condition." Id., quoting Cal. Gov. Code § 12940(j)(1). Thus, the Roby Court reinstated the jury's harassment verdict. Id. at 711.

Though the Court agrees with Plaintiff that Roby is an example of the California Supreme Court discussing that harassment may be established through conduct that communicates hostility, ridicule, or discriminatory animus based on a protected status (*i.e.*, a

medical condition in Roby), the Court finds its import limited insofar as supporting the harassment claim here based on sex.

In any event, in viewing the allegations under the totality of the circumstances, the Court first notes that Plaintiff's allegations that the positions of pilots and mechanics were male dominated with better pay rates and benefits appears to be something to consider overall but less connected to Plaintiff's harassment claim. Plaintiff then alleges that she, as an administrative, billing, and accounting professional, as well as male operational staff[2] were required to clean corporate residential apartments at differing pay rates. On September 12, 2025, Nisbett confronted Plaintiff (with no explanation as to what precipitated this) and leaned over Plaintiff's desk, pointed her finger at Plaintiff, and shouted that she "just want[ed] the fucking apartments cleaned and nothing else." (ECF No. 5, ¶ 19.) Following this, Plaintiff reported this incident as well as the pay disparities to company executives who instructed Plaintiff to "stay quiet," "remain submissive," and wait for the situation to "blow over." (Id.)

Following this, Plaintiff would be stripped of the billing responsibilities she held for a decade, heavily micromanaged her, isolated and ignored her for weeks, mocked within earshot, and told her not to speak with Vice President Robin Rogers about her concerns and to "go to therapy" when she sought basic work-related communication. (Id. at ¶ 20.) Ultimately, Plaintiff was terminated.

On balance, the Court finds that Plaintiff has sufficiently alleged harassment because of sex. In particular, the Court is stuck by Plaintiff's allegation that she and male operational staff were directed to clean the same or similar corporate apartments at differing rates favoring males. This allegation when viewed in totality of the other allegations discussed above, including the incident with Nisbett and actions by others following her reporting, leads to a plausible inference that Plaintiff experienced harassment because of her sex. To be sure, the Court agrees with Defendants that viewing certain aspects of the pleading in isolation could seem facially neutral (for example, being told to "remain submissive"), but the Court must view the claim under the

[2] Plaintiff has not necessarily alleged that her role was synonymous with the role of "operational staff." However, on a motion to dismiss, the Court views the allegations in the best light of the non-movant and infers that these roles were analogous.

totality of the circumstances alleged.

**2. Personnel-Management Conduct**

Defendants next argue Plaintiff's allegations demonstrate at most workplace supervision and management decisions. Though Plaintiff acknowledges the principle that ordinary personnel-management activity generally does not constitute harassment, Plaintiff contends that such conduct may also be viewed in totality and does not provide an exemption for conduct that is allegedly accompanied by gender-based intimidation, ridicule, humiliation, or abuse.

Again, a discrimination claim is a useful foil to contrast how to view personnel-management conduct as it relates to a harassment claim under the FEHA.

> 'Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc., in order to carry out the legitimate objectives of personnel management. Every supervisory employee can insulate himself or herself from claims of harassment by refraining from such conduct. An individual supervisory employee cannot, however, refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties.'

Serri v. Santa Clara University, 226 Cal. App. 4th 830, 869-70, 172 Cal. Rptr. 3d 732 (Cal. Ct. App. 2014), quoting Reno v. Baird, 18 Cal. 4th 640, 6446, 957 P.2d 1333 (Cal. 1998).

> '[T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management."

Id. at 870, quoting Reno, 18 Cal. 4th at 646-47.

Once more, the Court agrees with Plaintiff. Though Defendants attempt to frame the

allegations as centering on personnel-management conduct, they eschew or downplay certain allegations. For example, Nisbett leaned and pointed before shouting at Plaintiff about getting apartments cleaned while using an expletive. Plaintiff reported this conduct, and the pay disparities between men and women, to the president, vice president, and director of operations of the company. Rather than address Plaintiff's concerns, she was told to "stay quiet," "remain submissive," and wait for the situation to "blow over." Plaintiff alleges that she was then stripped of her normal responsibilities, a reasonable inference being that this was done so because of her reporting. Thereafter, she was heavily micromanaged, isolated and ignored, as well as mocked within earshot. Plaintiff was instructed to not speak with the vice president again about her concerns and to "go to therapy" when she sought basic work-related communication.

Defendants characterization that Nisbett shouting was only related to a work assignment is unpersuasive. Again, Nisbett leaned over Plaintiff's desk and pointed at her, in addition to shouting with an expletive, which the Court finds sufficiently infers intimidating behavior. "No supervisory employee needs to use slurs . . . [or] to physically interfere with freedom of movement, . . . in order to carry out the legitimate objectives of personnel management." Serri, 226 Cal. App. 4th at 869. This alleged incident in combination for alleged conduct by Defendants following Plaintiff's reporting sufficiently establishes that the conduct alleged included conduct outside the personnel-management sphere.

**3. Sufficiently Severe or Pervasive Conduct**

Defendants argue that the operative complaint does not allege conduct that is sufficiently severe or pervasive. Though Defendants note the incident between Plaintiff and Nisbett, Defendants argue that Plaintiff's allegations are generalized references to "repeated disparaging remarks," "hostility," "mocking," and isolation. Thus, Defendants contend that there are scant allegations to support frequency, severity, or context of the conduct. Plaintiff opposes, arguing that severity and pervasiveness are also considered under the totality of circumstances. Relatedly, Plaintiff raises that Defendants' argument goes more to what would be the ultimate strength of the evidence as opposed to plausibility on a motion to dismiss. The Court once more

agrees with Plaintiff

FEHA "harassment claims focus on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." Bailey, 16 Cal. 5th at 627 (internal quotation marks omitted). "The standard for workplace harassment claims strikes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Id. at 628 (internal quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [FEHA's] purview." Id. (internal quotation marks omitted). "But [FEHA] comes into play before the harassing conduct leads to a nervous breakdown" and proscribes discriminatory conduct that "detract[s] from employees' job performance" or "keep[s] them from advancing in their careers." Id. (internal quotation marks omitted).

"Whether harassment is sufficiently severe or pervasive that it creates a hostile work environment is not a 'mathematically precise test,' but rather a fact-specific inquiry that turns on the totality of the circumstances." Carranza v. City of Los Angeles, 111 Cal. App. 5th 388, 402, 332 Cal. Rptr. 3d 778 (Cal. Ct. App. 2025), quoting Bailey, 16 Cal. 5th at 628. Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Bailey, 16 Cal. 5th at 628 (internal quotation marks omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." Id. (internal citations and quotation marks omitted). "The objective severity [or pervasiveness] of harassment should be judged from the perspective of a reasonable person in the plaintiff's position," Id. at 629, and "requires consideration of the social context in which the behavior occurs and is experienced by its target." Carranza, 111 Cal. App. 5th at 402, citing Lyle, 38 Cal. 4th at 283.

Recently, the California Legislature clarified that in considering whether conduct is

severe or pervasive under FEHA, courts should consider if "the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment." Id. Thus, a single incident of harassing conduct may constitute harassment under FEHA. Id. Moreover, "a hostile work environment exists 'when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being." Id., quoting Wawrzenski v. United Airlines, Inc., 106 Cal. App. 5th 663, 693, 327 Cal. Rptr. 3d 245 (Cal. Ct. App. 2024). "The plaintiff is not required to show a decline in productivity, only 'that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job.'" Id., quoting Wawrzenski, 106 Cal. App. 5th at 693.

In support of her position that she has alleged severity and/or pervasiveness, Plaintiff highlights several allegations supporting her harassment claim, including profanity, physical intimidation, humiliation, gender-based context, repeated remarks, and management's refusal to investigate. The Court agrees with Plaintiff that, on a motion to dismiss, these allegations sufficiently allege plausible severity and/or pervasiveness for a FEHA harassment claim. Specifically, the Court notes that Plaintiff has not only alleged the incident with Nisbett, but also a course of action taken against her following her reporting the conduct as well as pay disparities between men and women. Being mocked, told not to talk with management, and told to go to therapy could reasonably alter working conditions as to make it more difficult to do the job. In fact, Plaintiff alleges her duties were altered and she was thereafter micromanaged. This all in combination could plausibly have affected a reasonable person's emotional tranquility in the workplace or sense of well-being.

Defendants' contention that Plaintiff is required to alleged that the workplace was "permeated with discriminatory intimidation, ridicule, or insult" appears to be an overstatement or oversimplification of the law in light of the legal standard discussed in this section.

* * *

In sum, the Court finds that Plaintiff has sufficiently pleaded a harassment claim under the FEHA. Because she has done so, the Court also finds Defendants' extension argument that because the harassment claim fails it necessarily fails against corporate Defendant Rogers Helicopters to be without merit. Accordingly, the Court will deny Defendants' partial motion to dismiss.

## IV.

## CONCLUSION AND ORDER

The October 28, 2026 hearing on the motion to dismiss is VACATED. For the reasons discussed herein, the Court HEREBY DENIES Defendants' partial motion to dismiss. (ECF No. 6.)

IT IS SO ORDERED.

Dated: **October 26, 2026**

STANLEY A. BOONE
United States Magistrate Judge